S10G1899. MULLIGAN v. SELECTIVE HR SOLUTIONS, INC.
(716 SE2d 150)

HINES, Justice.

This Court granted certiorari to the Court of Appeals in *Selective HR Solutions v. Mulligan*, 305 Ga. App. 147 (699 SE2d 119) (2010), to consider whether the Court of Appeals erred in concluding that the State Board of Workers' Compensation ("Board") exceeded its authority in promulgating its Rule 205.[1] For the reasons that follow, we conclude that formulation of Rule 205 was not outside the

---

[1] At the time of the opinion by the Court of Appeals, Board Rule 205 provided, in pertinent part:

. . .

(b) (1) Medical treatment/tests prescribed by an authorized treating physician shall be paid, in accordance with the [Workers' Compensation] Act, where the treatment/tests are:
(a) Related to the on the job injury;
(b) Reasonably required and appear likely to accomplish any of the following:
(1) Effect a cure;
(2) Give relief;
(3) Restore the employee to suitable employment;
(4) Establish whether or not the medical condition of the employee is causally related to the compensable accident.
(2) Advance authorization for the medical treatment or testing of an injured employee is not required by this Chapter as a condition for payment of services rendered. A Board certified [Workers' Compensation/Managed Care Organization] may provide for pre-certification by contract with network providers pursuant to O.C.G.A. § 34-9-201(b)(3).
(3) (a) An authorized medical provider may request advance authorization for treatment or testing by completing Sections 1 and 2 of Board Form WC-205 and faxing or emailing same to the insurer/self-insurer, along with supporting medical documentation. *The insurer/self-insurer shall respond by completing Section 3 of the WC-205 within five (5) business days of receipt of this form.* The insurer/self-insurer's response shall be by facsimile transmission or email to the requesting authorized medical provider. *If the insurer/self-insurer fail to respond to the WC-205 request within the five business day period, the treatment or testing stands pre-approved.*
(b) In the event the insurer/self-insurer furnish an initial written refusal to authorize the requested treatment or testing within the five business day period, then within 21 days of the initial receipt of the WC-205, the insurer/self-insurer shall either: (a) authorize the requested treatment or testing in writing; or (b) file with the Board a Form WC-3 controverting the treatment or testing indicating the specific grounds for the controversion.
(c) (1) If medical treatment is controverted on the ground that the treatment is not reasonably necessary, the burden of proof shall be on the employer. If the

authority of the Board, but nevertheless, that the judgment of the Court of Appeals is properly affirmed.

The evidence as outlined by the Court of Appeals was the following. Mulligan injured her back in September 2005 while she was at work at her place of employment. She received treatment pursuant to the workers' compensation system, including lumbar surgery by an authorized treating physician ("ATP"), and recovered sufficiently to return to work in July 2006. In May 2007, Mulligan fell at home and re-injured her back; she went to a private primary care physician, complaining of foot and back pain, explaining that she had fallen through her floor. She then sought a second opinion from an orthopaedist; she complained of low back pain which had developed gradually over several months. Mulligan submitted the bill to her husband's group insurance. In August 2007, Mulligan saw yet another physician and reported that the symptoms of her 2005 injury had totally disappeared but then recurred "for whatever reason" two months earlier. Mulligan returned to the ATP, who after treating Mulligan for pain, ordering a MRI, and consulting with Mulligan, concluded that another lumbar surgery was required and on October 26, 2007, sent Board Form WC-205 to Mulligan's insurer/employer, Selective HR Solutions, Inc. ("Selective"), re-questing pre-authorization to proceed with the surgery pursuant to Board Rule 205. On December 7, 2007, Selective faxed a note to the ATP stating that it would not authorize the procedure, and on December 11, 2007, returned Form WC-205, refusing to authorize the requested surgery without a second opinion. Nevertheless, the ATP operated on Mulligan three days later, and Selective refused to pay for the surgery.

On June 16, 2008, an administrative law judge ("ALJ") denied Mulligan's claim for additional benefits, finding that she had not

---

treatment is controverted on the grounds that the treatment is either not autho-rized or is unrelated to the compensable injury, the burden of proof shall be upon the employee.

(2) In the event of a dispute as to the necessity and/or reasonableness of services already rendered, the procedure listed in Board Rule 203(c) shall be followed.

(d) If an employer or insurer utilizes a Board certified WC/MCO pursuant to O.C.G.A. § 34-9-201(b)(3), and a dispute arises regarding the treatment/test pre-scribed by the authorized treating physician and the dispute is not resolved within 30 days as outlined in Rule 208 (f), then the employer or insurer has 15 days from notification by the WC/MCO to authorize the treatment/test or controvert the treatment/test. In no event will the employer or insurer utilizing a WC/MCO have more than 45 days from the receipt of the notice of a dispute as set forth in Rule 208 (f) to comply with this provision.

(4) *Where the employer fails to comply with Rule 205(b)(3), the employer shall pay, in accordance with the Chapter, for the treatment/test requested.*
(Emphasis supplied.)

shown either a change in condition regarding her September 2005 injury or that her December 2007 surgery was compensable, in that she failed to show that such medical treatment was rendered for the September 2005 work injury rather than for an intervening traumatic injury.[2] The Board adopted the award of the ALJ on September 24, 2008. On January 9, 2009, the superior court entered an order which affirmed the finding that Mulligan had not sustained a change in condition, but reversed the Board award insofar as it denied Mulligan's claim for medical expenses with respect to her second surgery in December 2007. It did so based upon its determination that the insurer had lost its ability to controvert the claim because it did not timely respond to the ATP's WC-205 Form, i.e., that it was in violation of Rule 205, and thus, was required to pay for the expenses of the surgery regardless of whether the injury necessitating the surgery was compensable. Mulligan appealed the adverse ruling regarding the change in condition, and Selective appealed the unfavorable ruling with regard to Rule 205 to the Court of Appeals.

The Court of Appeals affirmed the judgment of the superior court with regard to its adverse ruling on Mulligan's claim of a change in condition, but reversed the judgment as to the superior court's determination with respect to Rule 205. It concluded that insofar as that aspect of Rule 205 precluding an employer from contesting the compensability of treatment is at issue, Rule 205 is invalid as substantive rule-making which impermissibly shifts the claimant's burden of proof to show that an injury is work-related and invades the province of the Legislature. It found that although OCGA § 34-9-60 (a) granted the Board rule-making authority, it was not authorized to promulgate rules that would affect the substantive rights of the parties. Noting that workers' compensation law requires payment for medical treatment only that is related to an on-the-job injury and that it puts the burden of proving a compensable injury on the claimant, the Court of Appeals reasoned that Rule 205 effectively shifts that burden by establishing a rebuttable presumption of compensability that becomes a conclusive presumption where the employer fails to timely respond. Thus, it reversed the superior court on that issue, effectively holding that Selective was not required to pay for Mulligan's December 2007 surgery.

1. The analysis by the Court of Appeals is flawed. The focus of its opinion is the Board's rule-making authority, which it ultimately

---

[2] The ALJ's award specifies that Mulligan was asking for a finding of a change in condition under the Workers' Compensation Act, and requested in addition to her expenses for the surgery, income benefits for temporary partial disability from December 1, 2007, through December 13, 2007, temporary total disability benefits from December 14, 2007, and continuing, attorney fees, and litigation expenses.

determined was exceeded. But, that is not the case. As the Court of Appeals had previously and correctly observed:

> Under OCGA § 34-9-59, the Board is empowered and authorized to adopt proper rules of procedure to govern the exercise of its functions and hearings before the [B]oard or any of its members or administrative law judges. However, this power is not without limitation. OCGA § 34-9-60 (a) states that [t]he [B]oard may make rules, not inconsistent with this chapter, for carrying out this chapter. The statutory converse of this rule is that the Board shall not make rules that are inconsistent with Chapter 9 of Title 34. . . . The State Board of Workers' Compensation is an administrative commission, with such jurisdiction, powers, and authority as may be conferred upon it by the General Assembly. The Board is a creature of the statute, and has no inherent powers and no lawful right to act except as directed by the statute. It may exercise its rule-making powers under and within the law, but not outside of the law or in a manner inconsistent with the law. Although [OCGA § 34-9-60] grants to the Board the power to make rules, not inconsistent with this Title, for carrying out the provisions of this Title, Board rules so promulgated may not enlarge, reduce, or otherwise affect the substantive rights of the parties.

*MARTA v. Reid,* 282 Ga. App. 877, 883 (3) (640 SE2d 300) (2006) (Citations and punctuation omitted). It is within the purview of this Court to consider the validity of an agency rule by determining whether it comports with the legislative enactment which authorizes the rule. See *HCA Health Svcs. of Ga. v. Roach,* 265 Ga. 501, 503 (2) (458 SE2d 118) (1995). In doing so, this Court should consider the rule in its entirety. See *North Fulton Med. Center v. State Health Planning Agency,* 233 Ga. App. 28, 29 (503 SE2d 47) (1998). The analysis by the Court of Appeals considered in isolation subparagraph (b) (3) (a) of Rule 205, which, as previously noted, provides that in the event the insurer/self-insurer does not respond within five (5) business days of receipt of the WC-205 request, the subject treatment or testing is deemed to be pre-approved. However, this approach overlooks, and in fact, negates the requirement in Rule 205, found in (b) (1) (a), which provides that medical treatment or tests prescribed by an ATP are to be paid, *in accordance with the Workers' Compensation Act,* where such treatment or tests are *related to the on the job injury.* For purposes of the Workers' Compensation Act, OCGA § 34-9-1 et seq., in order for an injury to be

compensable it must arise out of and in the course of employment. *Collie Concessions, Inc. v. Bruce*, 272 Ga. App. 578, 580 (1) (612 SE2d 900) (2005). The fact that an insurer or self-insurer does not timely respond to a request for treatment or tests, and thereby, becomes obligated for pre-approval of that which is requested does not abrogate the threshold mandate that the medical care be for a compensable injury. To find otherwise would be tantamount to obliterating this bedrock requirement, and thereby, to contravening the very purpose of the Workers' Compensation Act. Rule 205 does not mandate that an employer's failure to respond within five days to an ATP's request for advance authorization for treatment results in the employer's obligation, as a matter of law, to pay for such medical treatment *regardless of whether the underlying injury is work-related.*[3] This is confirmed by the fact that effective July 1, 2011, subparagraph (b) (4) of Rule 205, was revised to read, "Where the employer fails to comply with Rule 205 (b) (3), the employer shall pay for the treatment/test requested *related to the compensable injury* in accordance with the Chapter." (Emphasis supplied.) Thus, contrary to the analysis and resulting conclusion by the Court of Appeals, Rule 205 is not burden-shifting in the manner found, and does not interfere with the substantive rights of the parties.

2. As found by the Court of Appeals in this case, there is evidence to support the subject rulings below that Mulligan did not sustain a subsequent compensable injury; therefore, the judgment of the Court of Appeals reversing the order of the superior court interpreting Rule 205 stands.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 3, 2011.

*Westmoreland, Patterson & Moseley, Thomas W. Herman,* for appellant.

*Gray, Rust, St. Amand, Moffett & Brieske, James T. Brieske,* for appellees.

*Christopher J. Perkins, Donald J. Palmisano, Jr.,* amici curiae.

---

[3] That is not to say, however, that an insurer/self-insurer is not subject to any sanction for failing to respond to a physician's request for preauthorization within the five day time frame in Rule 205, either authorizing or denying the requested treatment or testing. In such circumstance, the Board is authorized to assess civil penalties and attorney fees. See OCGA § 34-9-18 (a); *Caremore, Incorporated/Wooddale Nursing Home v. Hollis,* 283 Ga. App. 681, 683 (1) (642 SE2d 375) (2007).