**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 27, 2023**

# In the Court of Appeals of Georgia

A23A1185. CITY OF ATLANTA et al. v. SEBASTIAN.

MERCIER, Judge.

Following the City of Atlanta's decision to unilaterally suspend his workers' compensation benefits, Justin Sebastian filed a motion to recommence benefits with the State Board of Workers' Compensation ("the Board"). The Board found the suspension improper, reinstated Sebastian's benefits, and awarded attorney fees to Sebastian. The City appealed the Board's ruling to the Superior Court of Fulton County, which upheld the decision. We granted the City's application for discretionary review, and for reasons that follow, we affirm.

1. "If any evidence supports the Board's findings, those findings are binding and conclusive, and neither this Court nor the superior court may substitute itself as the fact[-]finding body." *Hartford Cas. Ins. Co. v. Hawkins*, 353 Ga. App. 681, 685

(839 SE2d 230) (2020) (citation and punctuation omitted). Questions of law and the application of law to undisputed facts, however, are reviewed de novo. See id.; *Technical College System of Ga. v. McGruder*, 326 Ga. App. 469, 469 (756 SE2d 702) (2014).

In this case, the operative facts are not in dispute. Sebastian, a City of Atlanta police officer, suffered work-related injuries during a motor vehicle collision in December 2017. The City commenced payment of workers' compensation benefits, with Dr. Wing Chang serving as Sebastian's authorized treating physician. Sebastian subsequently requested a change of physician, and he selected Dr. Craig Weil as his authorized treating physician from the panel of physicians posted by the City pursuant to OCGA § 34-9-201 (b) (1).

On April 25, 2019, Weil released Sebastian "to light duty with the following restrictions: . . . No field patrol duty. Limited to desk duty or office duty. No restraint situations. No defensive tactic situations." At subsequent visits, Weil treated Sebastian for issues relating to his cervical spine, shoulder, arms, and wrist. Weil diagnosed Sebastian with carpal tunnel syndrome and a possible rotator cuff tear, and he recommended that Sebastian "follow up with a cervical spine doctor." In conjunction with a treatment session on September 8, 2020, Weil found: "Additional

2

medical evaluation is requested for the cervical spine. Dr. Thomas Dopson is recommended."

Sebastian saw Dopson on September 16, 2020. Following that examination, Dopson concluded that Sebastian was at maximum medical improvement and "should be capable of unrestricted employment in regards to his cervical and lumbar spine." In October 2020, Weil completed a "work release" stating that Sebastian had reached maximum medical improvement and was released for "[f]ull duty" with respect to his cervical and lumbar spine injuries. Following a treatment visit on November 17, 2020, however, Weil modified this assessment, ordering that Sebastian be "[r]elease[d] to light duty with the following restrictions: . . . No defensive tactic situations." Weil further stated: "The patient is not returning to our office for treatment. The restrictions are set for no defensive tactics and will be determined by the spine specialist he sees through work comp. **RECOMMENDATION:** Christopher Edwards, M. D."

It does not appear that Sebastian was treated by Edwards. But he returned to Dopson in January and February 2021, after which Dopson concluded that Sebastian could "[r]eturn to [r]egular duty." Citing the February 2021 work release, the City unilaterally suspended Sebastian's workers' compensation benefits on the following

3

ground: "Employee was able to return to work on 2/3/2021 without restrictions from the authorized treating physician[.]"

Sebastian moved to reinstate his benefits, arguing that because Dopson was not his authorized treating physician, his benefits could not be suspended based on Dopson's work release. The Administrative Law Judge ("ALJ") assigned to the case agreed, found the unilateral suspension improper, reinstated Sebastian's benefits, and ordered the City to pay Sebastian's counsel $2,600 in assessed attorney fees. On further review, the Board's appellate division affirmed the ALJ's decision, and the superior court upheld that finding. This appeal followed.[1]

The primary issue in this case involves the statutory and regulatory circumstances under which an employer may unilaterally suspend an employee's workers' compensation benefits following a work release. The Workers' Compensation Act, OCGA § 34-9-1 et seq., "is a humanitarian measure to be construed liberally, and its purpose is to provide compensation for an injured employee in proportion to his loss of future earnings on account of the injury." *Ware*

---

[1] As part of its decision, the appellate division designated Dopson as Sebastian's new authorized treating physician going forward. Sebastian appealed the physician change to the superior court, which affirmed the appellate division's designation. Sebastian has not challenged that ruling before this Court.

4

*County Bd. of Ed. v. Taft*, 350 Ga. App. 848, 850 (830 SE2d 326) (2019) (citation and punctuation omitted). In analyzing the Act's provisions,

> we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

Id. (citation and punctuation omitted). We must also "avoid a construction that makes some language mere surplusage." *Roseburg Forest Products Co. v. Barnes*, 299 Ga. 167, 169 (1) (787 SE2d 232) (2016) (citation and punctuation omitted). These same rules of construction apply to the Board's rules and regulations. See *Walker v. Dept. of Transp.*, 279 Ga. App. 287, 292 (2) (a) (630 SE2d 878) (2006).

The Act requires an employer to pay weekly income benefits to an injured worker who falls within the Act's purview. See OCGA § 34-9-221. Although OCGA § 34-9-221 references suspension of benefits, it is silent as to how such benefits may be suspended following a release to full duty work. See OCGA § 34-9-221 (c). Instead, the mechanism for benefit suspension is contained in Board Rule 221, which provides in pertinent part:

5

When suspending benefits for release to return to work without restrictions, the employer/insurer shall attach to the Form WC-2 a copy of the supporting medical report from employee's authorized treating physician, who must have examined the employee within sixty days of the effective date of the release.

Bd. Work. Comp. r. 221 (i) (4) (a). The WC-2 form, in turn, requires the employer to provide the date the employee was able to return to work "without restrictions from the authorized treating physician."

Neither the Act nor the Board's rules expressly defines "authorized treating physician." The statutory scheme, however, provides for the appointment of a doctor to manage and oversee an injured worker's medical care. Pursuant to OCGA § 34-9-201 (b), the injured worker may select a physician from the employer's list of physicians. See OCGA § 34-9-201 (b) (1). The selected physician is authorized to refer the worker to a specialist or other doctor for treatment. The statute, however, draws a clear distinction between the "primary authorized treating physician" and a referred or consulting specialist. As provided in OCGA § 34-9-201 (b) (1):

The physicians selected under this subsection from the panel may arrange for any consultation, referral, and extraordinary or other specialized medical services as the nature of the injury shall require without prior authorization from the board; provided, however, that *any*

6

*medical practitioner providing services as arranged by a primary authorized treating physician under this subsection shall not be permitted to arrange for any additional referrals.*

(Emphasis supplied).

The City concedes on appeal that Dopson was a referred "spine specialist" brought into the case by Weil, "the authorized treating physician for [Sebastian]." Nevertheless, it argues that because Dopson was "undisputedly *an* authorized treating physician," i.e., a physician permitted to treat Sebastian, Dopson's determination that Sebastian could be released to full duty work without restrictions supported a suspension of benefits. Characterizing Dopson as "'employee's authorized treating physician' for his spine," the City contends that its unilateral suspension was proper under Rule 221 (i) (4) (a).

We disagree. As discussed above, the statutory scheme — as well as the Board's corresponding rules — distinguishes between authorized treating physicians and referred physicians. See OCGA § 34-9-201 (b) (1); Bd. Work. Comp. r. 201 (a) (1) (i). The Act makes numerous references to "the authorized treating physician," discussing that physician's centralized role in an injured worker's care. See, e.g., OCGA § 34-9-200 (c) ("As long as an employee is receiving compensation, he or she

7

shall submit himself or herself to examination by the authorized treating physician at reasonable times[.]"); OCGA § 34-9-201 (b) (1) ("primary authorized treating physician" arranges referrals); OCGA § 34-9-200.1 (g) (6) (A) (work release with restrictions by the authorized treating physician raises rebuttable presumption that injury is not catastrophic). Moreover, in a different context involving suspension of benefits, the Act permits the employer to unilaterally suspend benefits based on paperwork provided by "the authorized treating physician." See OCGA § 34-9-240 (b) (2).

The City focuses on the fact that Rule 221 (i) (4) (a) requires an employer to submit a supporting medical report from "*employee's* authorized treating physician" (emphasis supplied), rather than *the* authorized treating physician. It argues that this language allowed it to suspend benefits based on a report from "an" authorized treating physician — or any physician permitted to treat Sebastian. But nothing in the text of the Rule 221 (i) (4) (a) allows an employer to initiate a suspension of benefits based on a report from *any* physician who has treated the employee. Extending the rule in this manner not only construes the regulatory text unnaturally, it cuts against the statutory scheme's philosophy of centralizing care under one managing physician. And it would allow a referred specialist to trigger a suspension of benefits based on

8

the specialist's treatment of a particular condition, even if the employee has another condition that might not support a return to full duty work. Such interpretation undermines the humanitarian purpose of the Act. See generally *Ware County Bd. of Ed.*, 350 Ga. App. at 850.

We agree with the Board that the City's unilateral suspension of benefits based on a work release from a referred physician violated the workers' compensation rules and contravened the Act. The trial court, therefore, properly affirmed the Board's decision to reverse the suspension and reinstate Sebastian's benefits.[2]

2. The City also argues that the trial court erred in affirming the Board's award of attorney fees to Sebastian. Counsel for Sebastian requested an attorney fee award in the amount of $2,600 for time spent researching and preparing the motion challenging the suspension of benefits, as well as attempting to resolve the issue prior to filing the motion. In conjunction with that request, counsel submitted an affidavit

---

[2] The City suggests that Weil clearly "deferred" any decision on Sebastian's work status to Dopson. The Board found otherwise, given Weil's reference to Christopher Edwards (not Dopson) in the alleged deferral, and at least some evidence supports that factual determination. We need not address, therefore, whether an employer may unilaterally suspend benefits based on the findings of a referred specialist to whom the authorized treating physician has deferred the work status decision.

detailing his efforts, which resulted in eight hours of work at an hourly rate of $325. The ALJ approved the request, finding as follows:

> Inasmuch as the employer/insurer failed to comply with Board rules in the unilateral suspension of the employee's benefits, I find that assessed attorney's fees are warranted for unreasonable defense of the employee's request to recommence his benefits. I find that the $2600 in assessed attorney's fees requested by employee's counsel is a reasonable fee for the efforts of employee's counsel in trying to convince the employer/self-insurer not to suspend the employee's benefits before the employee's benefits were suspended and then having to file the motion seeking recommencement of benefits after the employee's benefits were suspended in violation of Board rules.

The appellate division and the trial court subsequently affirmed the award. We find no error. Pursuant to OCGA § 34-9-108 (b) (1), "[u]pon a determination that proceedings have been brought, prosecuted, or defended in whole or in part without reasonable grounds, the administrative law judge or the board may assess the adverse attorney's fee against the offending party." Whether an employer lacks reasonable grounds in defending against a claim is "an issue of fact for determination by the Board, and if there is any evidence to support the award, the superior court and this Court must affirm." *Waters v. PCC Airfoils*, 328 Ga. App. 557, 560 (762 SE2d 617) (2014) (citation and punctuation omitted).

10

The City argues that, at all times, it acted reasonably in unilaterally suspending benefits based on Dopson's work release, defending against Sebastian's efforts to recommence benefits, and seeking resolution of "this purely legal issue." But the Board found the City's defense unreasonable after concluding that it failed to comply with Board rules, and the record supports that conclusion. As discussed above, nothing in Rule 221 (i) (4) (a) authorizes a unilateral suspension of benefits based on a work release from a referred physician. Nevertheless, the City pursued a suspension on the recommendation of Dopson, a referred specialist, offering no documentation from Sebastian's authorized treating physician. Given these circumstances, the Board was permitted to find the City's defense of its actions unreasonable and award fees based on the affidavit submitted by Sebastian's counsel. See *MARTA v. Thompson*, 326 Ga. App. 631, 636 (3) (757 SE2d 228) (2014) ("Since there is some evidence to support the ALJ's findings, we must affirm the award of attorney fees.").

*Judgment affirmed. Miller, P. J., and Hodges, J., concur*.